[Cite as *State v. Dillon*, 2013-Ohio-614.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
WASHINGTON COUNTY

STATE OF OHIO, : Case No. 11CA31
:
    Plaintiff-Appellee, :
: DECISION AND
    v. : JUDGMENT ENTRY
:
CHRYSTAL N. DILLON, :
: **RELEASED 02/05/13**
    Defendant-Appellant. :
_____
APPEARANCES:

Lisa C. Julius, Columbus, Ohio, for appellant.

James E. Schneider, Washington County Prosecuting Attorney and Alison L. Cauthorn, Washington County Assistant Prosecuting Attorney, Marietta, Ohio, for appellee.
_____
Harsha, J.

    **{¶1}**   Chrystal Dillon appeals her convictions for child endangering and argues there was insufficient evidence to support them. Specifically, she contends the state did not prove that she acted recklessly or created a substantial risk to her children's health or safety. We agree. The evidence concerning Dillon's lack of supervision prior to the fire that killed her daughter showed that Dillon was briefly in an adjacent room while her children played on a secure deck. During the short time she was not watching them; the children left the deck and started a fire in an adjacent structure. However, the state did not introduce any evidence to suggest Dillon left her children alone for an unreasonable period of time. Because no rational trier of fact could have found beyond a reasonable doubt that she acted recklessly or created a substantial risk to her children's safety, there was insufficient evidence to support her convictions.

I. FACTS

{¶2}   This case arises from a fire that tragically killed two-year-old Bianca Jackson.  Four-year-old Josh McCullors, Bianca's brother, was also in the building when the fire began, but escaped unharmed.  As a result of this fire, the state charged Chrystal Dillon, the children's mother, with one count of involuntary manslaughter and two counts of child endangering.  She pleaded not guilty and the case proceeded to trial.

{¶3}   At trial, the state contended that before the fire the two children were left unsupervised to play on the deck of the family home.  The state alleged that after Dillon went into a bedroom and left the children unattended, Josh and Bianca and entered an abandoned structure next to their home and Josh started the fire.  The jury convicted Dillon of two counts of child endangering, in violation of R.C. 2919.22(A)&(E)(2)(c) for Bianca and R.C. 2919.22(A)&(E)(2)(a) for Josh.  The jury was hung on the involuntary manslaughter charge.  The court sentenced Dillon to a six month term on each count to be served concurrently.  Dillon now appeals these convictions.

## II. ASSIGNMENTS OF ERROR

{¶4}   Dillion presents two assignments of error for our review:

{¶5}   1. "THE JURY'S VERDICT FINDING DEFENDANT-APPELLANT GUILTY OF TWO COUNTS OF ENDANGERING CHILDREN, A FELONY OF THE THIRD DEGREE AND MISDEMEANOR OF THE FIRST DEGREE, IS NOT SUPPORTED BY SUFFICIENT EVIDENCE."

{¶6}   2. "THE JURY'S VERDICT FINDING THE DEFENDANT-APPELLANT GUILTY OF TWO COUNTS OF ENDANGERING CHILDREN IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

## III. SUFFICIENCY OF THE EVIDENCE

{¶7}   Initially, Dillion argues that there is insufficient evidence to support her convictions for child endangering.  She contends that the state did not prove she had

the culpable mental state, i.e. recklessness, required to convict her of child endangering. Likewise, she also claims that the evidence presented at trial did not prove beyond a reasonable doubt that her temporary lack of supervision created a substantial risk of harm.

### A. Standard of Review

{¶8}     "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus (superseded by statute and constitutional amendment on other grounds).

{¶9}    This test raises a question of law and does not allow the appellate court to weigh the evidence. *State v. Osman*, 4th Dist. No. 09CA36, 2011-Ohio-4626, ¶ 39. A sufficiency of the evidence challenge tests whether the state's case is legally adequate to go to a jury in that it contains prima facie evidence of all of the elements of the charged offense. *See Portsmouth v. Wrage*, 4th Dist. No. 08CA3237, 2009-Ohio-3390, ¶ 36.

{¶10}  A conviction that is based on legally insufficient evidence constitutes a denial of due process. *State v. Thompkins*, 78 Ohio St.3d 380, 386-387, 678 N.E.2d 541 (1997). And the Double Jeopardy Clause precludes retrial once the reviewing court

has found the evidence legally insufficient to support a conviction. *Tibbs v. Florida*, 457

U.S. 31, 40–41, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982). *See also Thompkins* at 387.[1]

B. Law and Analysis

**{¶11}**  Dillon was convicted of two counts of child endangering in violation of R.C.

2919.22(A), which states: "No person, who is the parent * * * of a child under eighteen

years of age * * * shall create a substantial risk to the health or safety of the child, by

violating a duty of care, protection, or support."  "It is not necessary to show an actual

instance or pattern of physical abuse on the part of the accused in order to justify a

conviction under R.C. 2919.22(A)." *State v. Kamel*, 12 Ohio St.3d 306, 308, 466 N.E.2d

860 (1984).  "[A]n inexcusable failure to act in discharge of one's duty to protect a child

where such failure to act results in a substantial risk to the child's health or safety is an

offense under R.C. 2919.22(A)." *Id.* at 309.

**{¶12}**  Although not expressed in the statute, "the existence of the culpable

mental state of recklessness is an essential element of the crime of endangering

children under R.C. 2919.22(A)." *State v. McGee*, 79 Ohio St.3d 193, 195, 680 N.E.2d

975 (1997).  Thus, a successful R.C. 2919.22(A) conviction requires the state to prove

that: (1) a person having custody or control over a child under eighteen years of age (2)

recklessly (3) created a substantial risk to the health or safety of the child (4) by

violating a duty of care, protection, or support.  *See State v. Swain*, 4th Dist. No.

01CA2591, 2002 WL 146204, *7 (Jan. 23, 2002).

---

[1] There is a notable distinction between a reversal based upon insufficient evidence and one resting upon the weight of the evidence. *State v. Thompkins,* 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). In contrast, a finding that the jury's verdict was against the weight of the evidence does not preclude a retrial under the Double Jeopardy Clause. *Tibbs v. Florida,* 457 U.S. 31, 43, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982).  *See also Thompkins* at 387.

**{¶13}** Dillon does not dispute that she had custody or control over her children, who were under 18 years of age at the time of fire, or that she had a duty to protect them. She does, however, challenge that she acted recklessly and that her conduct created a substantial risk to the safety of her children. Thus, we focus on these last two elements.

### 1. Recklessness

**{¶14}** "A person acts recklessly when, with heedless indifference to the consequences, he perversely disregards a known risk that his conduct is likely to cause a certain result or is likely to be of a certain nature. A person is reckless with respect to circumstances when, with heedless indifference to the consequences, he perversely disregards a known risk that such circumstances are likely to exist." R.C. 2901.22(C).

**{¶15}** The state's evidence showed that Dillon did not have electricity and used candles to light her home. Leonard Wilfong, Dillon's neighbor, testified that he saw black smoke coming from the adjacent structure and ran over to Dillon's home to let them know. He stated that Dillon and her boyfriend came out the front door and then ran toward the fire. At this time, he did not see the children. Dillon tried to enter the structure, but Wilfong testified that the flames were too large and he pulled her back. He stated that Dillon and her boyfriend "always had fireworks in [the structure]" and he could hear them "popping off" while the house was burning. He also testified that in the past he had seen Dillon's children playing unsupervised in the street outside the home. Wilfong further testified that the day before the fire, he heard Dillon's boyfriend yell "Chrystal * * * [Josh] started a fire on the porch again."

{¶16} Cory McCullors, Josh's father, testified that a short time after the fire he pulled out his lighter and asked Josh "what's this?" Josh was upset. He picked it up and pushed the button and then responded "Daddy, that's what started the fire. Sissy got scared and ran in the back room." However Josh did not ignite the lighter and McCullors stated "all he could do was push the button." He also stated that he had never seen his son use a lighter before.

{¶17} Karen Seagraves, a Children's Services caseworker, testified that she had been working with Dillon and her children since January 2009. Her contact with the family began while she was visiting a home in the area and saw Bianca unattended in the middle of the street. During her monthly visits and in the family's case plan, she addressed the issue of supervision with Dillon. She also addressed the issue of fireworks and explained that the children should not have access to any fireworks, even sparklers.

{¶18} On cross-examination, Seagraves testified that she asked Dillon to put up a gate on the deck to keep the children contained. She explained that Dillon complied and put up a gate and also some materials around the bottom of the deck so the children could not crawl through. A few weeks before the fire, Seagraves made another home visit and noted that there were no "serious safety hazards" present in the home that would cause "imminent risk of harm" to the children. In spite of the lack of electricity and the use of candles, she indicated she did not observe any lighters in the home, although both Dillon and her boyfriend smoked.

{¶19} Michael Stellfox, an investigator for the Ohio State Fire Marshal's Office, testified as an expert witness. He explained that Dillon's home was connected to the

vacant structure by a common deck. After examining the scene, he concluded he could not determine the exact point of origin, although he believed the fire started on the ground floor. He also testified someone "most likely" introduced an open flame somewhere in the structure and, because the vacant structure did not have electricity, he was able to rule it out as a cause. During his investigation, he found "punks," that are used to light fireworks scattered everywhere throughout the structure. He explained that an open flame must be used to light the punk stick initially and that the punk sticks smolder, but do not flame. However, the tip of the punk stick remains hot and if it touches something flammable that item would ignite.

{¶20}  During cross-examination, the defense played an interview between Stellfox and Dillon recorded on the night of the fire. During the interview Dillon stated that just prior to the fire she was in kitchen cleaning up with her boyfriend and the children were outside on the deck riding bikes. Then "a couple of seconds later" Josh came running inside and said "Fire, Daddy, fire, Daddy." Dillon stated they ran outside and saw the neighbor screaming the house is on fire. Dillon asked Josh where his sister was and he said she was in the structure. She tried to enter the burning structure, but her boyfriend stopped her. She then called the police department.

{¶21}  During this interview, Dillon also discussed a fire on the deck at their home two days before. She explained she had taken an old desk out onto the deck. She said that her boyfriend told her that Josh caught the desk on fire, but she did not see how that could have happened.

{¶22}  Ernest Clevenger, Chief of Police of the City of Belpre, testified that in the past he had visited Dillon's home due to complaints about the use of fireworks. And

during one visit he confiscated a large quantity of fireworks from the home, a portion of which were returned after examination. He later saw them in the basement of the vacant structure next to Dillon's home where the fire began. However, this was over a year prior to the day in question.

**{¶23}** Timothy Wilhelm, a fire investigator, testified as an expert witness for the defense. He testified that he believed the fire started on the ground floor and the cause of the fire was "undetermined." He explained that this meant "a number of different" things could have caused the fire. He also testified that because the drywall had been removed from the vacant structure, he believed the fire would have accelerated faster.

**{¶24}** Considering this evidence in a light most favorable to the state, we conclude a reasonable juror could find that there was a known risk that Josh could start a fire. This conclusion is based in large part on Wilfong's testimony that he overheard Dillon's boyfriend say the day before that Josh had started "another" fire on the deck and her own admission about the desk fire. However, recklessness also requires that the actor "perversely disregards a known risk…." We cannot say that a parent who leaves her children unattended on a secured deck while she briefly attends to housekeeping matters perversely disregards the risk that the children will leave the deck and start a fire in an adjacent structure containing fireworks. Such a parent might easily be found negligent but that is not the mens rea for child endangering. We might also find that her culpability could escalate to recklessness in the event she left the children unattended for an extended period of time or while she left the premises for an unreasonable period. But neither of those circumstances is reflected by the evidence here. In fact, the only evidence concerning the amount of time the children were

unsupervised on the porch came from Dillon who testified the children were alone for "…a couple of seconds…." Although this testimony is subject to scrutiny as being both self-serving and somewhat improbable, there is nothing in the record to indicate how long the children were on the porch before the fire started.

{¶25} Likewise, we cannot conclude that leaving the children briefly unattended on a gated deck was likely to result in one of them igniting the fireworks in an adjacent structure, i.e. it was likely to cause a certain result. There was no testimony about how Josh started the previous fire or that any incendiary device was available to him while he played on the deck. Although there was testimony that the vacant structure had previously contained fireworks and punk sticks were found at the scene, there was no evidence presented that the children had access to an incendiary device on the day in question. Therefore, we cannot say that Dillon's conduct was likely to cause a certain result, i.e. harm to her children. Accordingly, there was insufficient evidence to prove she acted recklessly.

2. Substantial Risk

{¶26} R.C. 2901.01(A)(8) defines "substantial risk" as "a strong possibility, as contrasted with a remote or significant possibility, that a certain result may occur or that certain circumstances may exist."

{¶27} Here, much of the state's evidence focused upon what caused the fire. There was only minimal testimony concerning Dillion's lack of supervision. We reiterate that our review of the record in this case reveals that the only evidence presented about Dillon's lack of supervision of the children prior to the fire, was her statements to Stellfox that she was in the kitchen cleaning up while the children were riding their bikes on the

deck and that "a couple of seconds later" there was a fire.  The diagram of Dillon's home entered into evidence by the state shows that the kitchen is adjacent to the deck. Although the state claims in its brief that "[t]here was no defense evidence introduced to establish where the Appellant and her boyfriend were in relation to the children, how long it had been since they had seen them, how often they were checking on them, whether they had secured the vacant house, whether they had secured lighters and matches, or what other steps they were taking prior to the fire to supervise the children and protect them from harm," this was not the defense's burden.  Rather, the state has the burden of proving every element of the charged offense beyond a reasonable doubt. *State v. Adams*, 103 Ohio St.3d 508, 2004-Ohio-5845, 817 N.E.2d 29, ¶ 97.

{¶28}  We find that merely leaving her children unattended on a secured deck while Dillon was in the adjacent kitchen, without further evidence concerning a lack of supervision, did not create a substantial risk to the children's health or safety.  The evidence showed that Dillon was in the kitchen cleaning up while her children were riding their bikes on a secured deck.  Dillon told Stellfox during the interview that one of the french doors leading from the kitchen to the deck was open.  She also stated that after only a "couple of seconds" Josh ran inside yelling fire.  Without further evidence that the children had access to some incendiary device or how long they were unattended on the deck, Dillon's lack of supervision did not create a strong possibility that harm would occur to the children in spite of the presence of fireworks at an adjacent structure.  Thus, even considering the evidence most favorable to the state, there is insufficient evidence to prove that Dillon created a substantial risk to the children's health or safety.

{¶29} The state cites *State v. Torr*, 10th Dist. No. 00AP-1418, 2002 WL 47040, (Jan. 15, 2002), to support its argument that it presented sufficient evidence to support the convictions. *Torr* is factually distinguishable from this case. There, a five-year-old child also died in a house fire. However, the child in that case had previously set as many as nine fires. *Id.* at *3. The most serious of these incidents involved a chair fire that caused significant damage to an upstairs bedroom. *Id.* The child admitted that he started the fire using a cigarette lighter. *Id.* Furthermore, after that incident the defendant refused to take her son to an education program recommended by the fire department to address her son's fixation with fire. *Id.* at *4. Several other witnesses testified that the defendant was aware of her son's involvement with lighters and fires and some indicated the problem was serious and continuing. *Id.* Thus, unlike Dillon, the mother in *Torr* had ample notice of her son's curiosity with fire and usage of lighters and continued to smoke in the house. Furthermore, when the fire occurred, the mother in *Torr* had left her son with a 12-year-old aunt who the mother also let smoke her in house. Thus, *Torr* is clearly distinguishable.

## IV. CONCLUSION

{¶30} The state failed to present sufficient evidence to show Dillon recklessly created a substantial risk to her children's safety by violating a duty of care. Even after viewing the evidence in a light most favorable to the prosecution, we conclude no rational trier of fact could have found beyond a reasonable doubt that Dillon committed all the necessary elements of the charged offense. Accordingly, we sustain her first assignment of error. Dillon's remaining assignment of error is rendered moot. *See* App.R. 12(A)(1)(c).

**{¶31}** We reverse the judgment of the trial court and remand with instructions to discharge the appellant.

JUDGMENT REVERSED
AND CAUSE REMANDED.

## **JUDGMENT ENTRY**

It is ordered that the JUDGMENT IS REVERSED and that the CAUSE IS REMANDED.  Appellee shall pay the costs.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Washington County Court of Common Pleas to carry this judgment into execution.

IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted.  The purpose of a continued stay is to allow Appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court.  If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Supreme Court of Ohio in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio.  Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.  Exceptions.

Kline, J.:  Concurs in Judgment and Opinion.
Abele, J.:  Dissents.

For the Court

BY:  _____
     William H. Harsha, Judge

### **NOTICE TO COUNSEL**

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**