[Cite as *State v. Bennett*, 2013-Ohio-5524.]

STATE OF OHIO, MAHONING COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO, | ) | |
| | ) | CASE NO.   12 MA 223 |
| PLAINTIFF-APPELLEE, | ) | |
| | ) | |
| VS. | ) | O P I N I O N |
| | ) | |
| KATRINA BENNETT, | ) | |
| | ) | |
| DEFENDANT-APPELLANT. | ) | |


CHARACTER OF PROCEEDINGS:        Criminal Appeal from County Court No.
                                 4, Case No. 12CRB817.


JUDGMENT:                        Reversed and Vacated.


APPEARANCES:
For Plaintiff-Appellee:          Attorney Paul Gains
                                 Prosecuting Attorney
                                 Attorney Ralph Rivera
                                 Assistant Prosecuting Attorney
                                 21 West Boardman Street, 6th Floor
                                 Youngstown, Ohio  44503


For Defendant-Appellant:         Attorney Jay Blackstone
                                 P.O. Box 3412
                                 Youngstown, Ohio  44513


JUDGES:
Hon. Joseph J. Vukovich
Hon. Gene Donofrio
Hon. Mary DeGenaro


                                 Dated:  December 13, 2013

VUKOVICH, J.

**{¶1}** Defendant-appellant Katrina Bennett appeals the decision of Mahoning County Court No. 4, finding her guilty of child endangering in violation of R.C. 2919.22(A). Bennett raises a sufficiency of the evidence argument. Specifically, she contends that the state failed to offer evidence that would prove beyond a reasonable doubt that she created a substantial risk to the health or safety of the child. For the reasons expressed below, her conviction and sentence are hereby reversed and vacated.

<u>Statement of Case and Facts</u>

**{¶2}** In late June 2012, K.B., an eight year old child diagnosed with epilepsy, Landau-Kleffner syndrome, behavioral optometry, and PDD, which is on the autism spectrum, was visiting his maternal grandmother Lori Hunter. Tr. 9, 14. During the visit, Hunter was giving K.B. a bath and noticed bruising on K.B.'s butt, leg and shoulder, scratches, and what appeared to be rug burn on his back. Tr. 14, 21. She described the bruising on his butt as being a large hand print. Tr. 15-16.

**{¶3}** Because those injuries alarmed her, she went to her local police department, Struthers, the next morning. Tr. 17. The Struthers police directed her to go to the Austintown Police Department; K.B. lives with his mother in Austintown and it was alleged that the injuries occurred at her home in Austintown. Tr. 18, 99, 131; State's Exhibit B - Bennett's Voluntary Statement to Police. At the Austintown Police Department Hunter made a statement, an officer took photographs of K.B.'s injuries, and K.B. was questioned.

**{¶4}** As a result of the statement, questioning, and photographs, Austintown Police Department asked Bennett and James Lamb, Bennett's friend, to come to the station for questioning. Both Bennett and Lamb voluntarily gave statements.

**{¶5}** Bennett indicated that she has asked Lamb to help her discipline K.B. She explained that Lamb uses military exercises as punishment. These exercises include an army crawl, and holding a broom while standing against a wall. She stated on Monday June 25, 2013, Lamb spanked K.B., which consisted of three swats on the buttock. She further explained that the scratches on K.B.'s stomach

and arms were from doing the army crawl and the rug burn on his back was probably from him pushing himself on carpet during one of his temper tantrums. State's Exhibit B.

**{¶6}** Lamb statement indicated that when K.B. gets "out of control", Lamb has him "low crawl" 24-30 feet or stand against a wall holding a broom for 30 to 45 seconds. He admitted to spanking K.B. and stated that it happened once. He also indicated that when K.B. was low crawling, K.B. was scraping his chest/stomach on the ground. State's Exhibit C.

**{¶7}** Thereafter, Lamb was charged with child endangering in violation of R.C. 2919.22(B)(1) and Bennett was charged with child endangering in violation of R.C. 2919.22(A). 7/13/12 Indictments.

**{¶8}** Lamb and Bennett were tried together before the bench. At trial the above information, including Lamb and Bennett's statements and the photograph's of K.B.'s injuries, were admitted. Also discussed was K.B.'s behavior. Bennett and Hunter both indicated that K.B. has temper tantrums. Tr. 11, 115. Hunter explained that during the tantrums, K.B. tries to hit you and if he cannot get to you he will try to hurt himself, he calls you names, and also beats his head on the floor. Tr. 30. Bennett's testimony confirms that and she also stated that during the tantrums he will scream "at the top of his lungs," and spit. Tr. 115-116. During her testimony a video of one of the tantrums he had on June 25, 2013, the date that the acts which constituted child endangering occurred, was played. This video confirms that he does hit himself and others, scream, throw things, and push himself on the carpet a little.

**{¶9}** Testimony from Lamb and Bennett also indicated on June 25, 2013, Bennett was at her "wits end" and asked Lamb for help. Tr. 111, 126. K.B. had been having tantrums almost all day long. Bennett indicated that she had tried the "burrito" wrap that the doctors had suggested to help him calm down, but that had not worked. Both Bennett and Lamb indicated that when Lamb arrived at her house, Lamb spanked K.B., had him stand at the wall with a broom and had him do army crawls. Tr. 96-97, 103, 136-142.

**{¶10}** Bennett also testified that the bruise on K.B.'s butt had occurred prior to June 25, 2013 and was the result of falling out of a bounce house and landing on his butt on the cement sidewalk. Tr. 124.

**{¶11}** After hearing all the evidence, the trial court found both Bennett and Lamb guilty of the charge against them. Bennett was sentenced to 180 days, with 175 days suspended and was ordered to pay a $250 fine plus costs. The court also indicated that she was only to have supervised visits with K.B.

**{¶12}** Bennett appeals from that conviction and sentence.

<u>Assignment of Error</u>

**{¶13}** "There was insufficient evidence to sustain Appellant's conviction under R.C. 2919.22(A), and therefore the court committed a prejudicial error in not granting Appellant's motion for acquittal under Crim.R. 29 (See trial transcript pages 4-76)."

**{¶14}** Following the state's case in chief, Bennett moved for acquittal pursuant to Crim.R. 29. Tr. 75-76. The trial court denied the motion. Tr. 76.

**{¶15}** An appellate court reviews a denial of a motion to acquit under Crim.R. 29 using the same standard it uses to review a sufficiency of the evidence claim. *State v. Rhodes,* 7th Dist. No. 99BA62, 2002–Ohio–1572, at ¶ 9; *State v. Carter,* 72 Ohio St.3d 545, 553, 651 N.E.2d 965 (1995).

**{¶16}** Sufficiency of the evidence is the legal standard applied to determine whether the case may go to the jury or whether the evidence is legally sufficient as a matter of law to support the verdict. *State v. Smith*, 80 Ohio St.3d 89, 113, 684 N.E.2d 668 (1997). In essence, sufficiency is a test of adequacy. *State v. Thompkins,* 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1977). Whether the evidence is legally sufficient to sustain a verdict is a question of law. *Id.* In reviewing the record for sufficiency, the relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Smith* at 113.

**{¶17}** Bennett was charged with and convicted of child endangering in violation of R.C. 2919.22(A), which states:

No person, who is the parent, guardian, custodian, person having custody or control, or person in loco parentis of a child under eighteen years of age or a mentally or physically handicapped child under twenty-one years of age, shall create a substantial risk to the health or safety of the child, by violating a duty of care, protection, or support.

{¶18} Therefore, a successful R.C. 2919.22(A) conviction requires the state to prove that: (1) a person having custody or control over a child under eighteen years of age (2) recklessly (3) created a substantial risk to the health or safety of the child (4) by violating a duty of care, protection, or support. *State v. Dillon*, 4th Dist. No. 01CA2591, 2013-Ohio-614, ¶ 12.

{¶19} "R.C. 2919.22(A) is aimed at preventing acts of omission or neglect." *State v. Newman,* 4th Dist. No. 94CA2079 (Aug. 18, 1995), citing *State v. Sammons,* 58 Ohio St.2d 460, 391 N.E.2d 713 (1979), and *State v. Kamel,* 12 Ohio St.3d 306, 308, 466 N.E.2d 860 (1984). Therefore, "[i]t is not necessary to show an actual instance or pattern of physical abuse on the part of the accused in order to justify a conviction under R.C. 2919.22(A)." *Kamel* at 308. "[A]n inexcusable failure to act in discharge of one's duty to protect a child where such failure to act results in a substantial risk to the child's health or safety is an offense under R.C. 2919.22(A)." *Id.* at 309.

{¶20} The allegation in this case is that Bennett failed to stop the military exercises and spanking and that this resulted in a substantial risk to K.B.'s health or safety. Bennett focuses on the substantial risk language and insists that the state did not provide evidence to show substantial risk.

{¶21} R.C. 2901.01(A)(8) defines "substantial risk" as "a strong possibility, as contrasted with a remote or significant possibility, that a certain result may occur or that certain circumstances may exist."

{¶22} During the state's case in chief, Hunter, K.B.'s grandma, testified. Detective-Sergeant Jordan Yacovone testified. Photographs of the injuries were

discussed and admitted into evidence, and the voluntary statements of Bennett and Lamb were discussed and admitted into evidence.

**{¶23}** Hunter testified that doctors had instructed her and Bennett that when K.B. is having a temper tantrum to place him in a submissive hold and that would help calm him down. Tr. 11-12, 39. Bennett, during her testimony, acknowledged that she had been instructed as such. Tr. 126. The photographs of K.B.'s injuries were discussed during the grandmother's testimony. She explained that there were scratches over his body and that the bruise on his bottom was in the shape of a large handprint. Tr. 21. Hunter testified that Bennett had told her that the bruise on K.B. butt was from falling out a bounce house. Tr. 24. She also indicated that during K.B.'s temper tantrums he does not throw himself on the floor and push himself around. Tr. 32. Therefore, she was asserting that the injury on K.B.'s back that looked like rug burn was not caused by actions taken by K.B. during a temper tantrum.

**{¶24}** The photographs show some scratches on the child's belly and arms, bruising on his buttock, knee and arms, and what appears to be rug burn on the child's back. State's Exhibit A and A-1.

**{¶25}** During Detective Sergeant Yacovone's testimony, the voluntary statements from Bennett and Lamb were discussed. In Bennett's statement, she acknowledged that she asks Lamb to help her with discipline, which he does. She stated that Lamb administers a military style discipline, such as making K.B. army crawl or stand against a wall and hold a broom. She also admitted that on the day in question, Lamb did spank K.B. on the buttock, which consisted of three swats. She indicated that the scratches on K.B's stomach/chest were from the army crawling and that the rug burn on his back was from pushing himself across the carpet during one of his temper tantrums. State's Exhibit B. Her statement did not indicate what made the bruise on K.B.'s butt.

**{¶26}** In Lamb's statement, he indicated that when K.B. "gets out of control" he has him army crawl for 24-30 feet or makes him sit up against the wall for 30-40 seconds or makes him stand and hold a broom outward for 30-45 seconds. Lamb

explained that when K.B. was army crawling, he was scraping his chest and stomach on the ground. State's Exhibit C. Thus, Lamb was suggesting where the scratches on K.B.'s stomach/chest came from. Lamb also stated that he spanked K.B. on the butt once.

{¶27} During cross-examination, Detective Sergeant Yacovone testified that both Lamb and Bennett told him that they administered the military exercises as punishment when K.B. was "acting out", i.e. having a temper tantrum. Tr. 64. When asked whether he believed this type of discipline is reasonable or effective for an autistic child, he responded that it was his opinion that this type of discipline is not reasonable for any child. Tr. 65. However, he qualified that statement by indicating that he could not "say for a fact" that this type of discipline was unreasonable for an autistic child because he is not an expert of autistic children. Tr. 65.

{¶28} The state at oral argument conceded that the military exercises administered in this case were not enough, by themselves, to meet the statutory elements. However, it asserted that the exercises should be taken in conjunction with the spanking. We agree with their concession that the evidence regarding these military exercise alone is not enough for a reasonable trier of fact to find substantial risk to the health or safety of the child, thereby violating a duty of protection. These military exercises are sometimes performed in gym classes and/or for sports training. Therefore, the only means in which it could be concluded that the element of substantial right element was met is to view the exercises along with the spanking.

{¶29} At the outset, it is noted that a parent has a fundamental liberty interest in the care, custody and management of his or her children. *In re D.P.,* 4th Dist. Nos. 11CA30, 11CA31, 2012–Ohio–3478, ¶ 11. Likewise, spanking is not illegal in Ohio unless it constitutes corporal punishment that is prohibited under the language in R.C. 2919.22. See *State v. Suchomski,* 58 Ohio St.3d 74, 75, 567 N.E.2d 1304 (1991) (the Supreme Court of Ohio has recognized that a parent may use corporal punishment when disciplining his or her child, as long as they do not cause physical harm); *Glancy v. Spradley*, 12th Dist. No. CA2012-02-024, 2012-Ohio-4224, ¶ 12 (a child who has received corporal punishment is not an abused child so long as that

corporal punishment is not otherwise prohibited by R.C. 2919.22. That section of the statute forbids parents from administering corporal punishment that creates a substantial risk of serious physical harm, or repeatedly administering unwarranted disciplinary measures to the child when such disciplinary measure would seriously impair or retard the child's mental health or development.)

{¶30} Here, Bennett was not the person spanking the child, rather it was Lamb. While it is true that she asked him to help with discipline, she did not know the velocity with which Lamb was going to spank the child. This spanking consisted of 3 swats. This is not a situation where she has previously watched him do alleged excessive punishment and permitted him to continue such behavior. Nor was this a prolong spanking that she failed to intervene and stop. A spanking that consisted of three swats with a hand that may have left a bruise on the child's buttock, even when viewed in the light most favorable to the prosecution, is not enough, without more evidence, to show a substantial risk to the health or safety of the child.

{¶31} That said, we acknowledge that there is testimony that this child is autistic and has other developmental and/or physical disabilities. The most problematic and glaring deficiency in the state's case is its failure to expand upon these disabilities and provide an opinion as to how the discipline used created a substantial risk to the health and safety of this child. Admittedly, the officer did testify that it was his opinion that this type of discipline was not reasonable, however, he admitted that he was not an expert on autistic children. Given the facts of this case, without more evidence as to the effect of these military exercises and a spanking (which at most left a bruise on the child's buttock) on this child's health and safety, we cannot find that the state has provided sufficient evidence on the element of substantial risk to the health or safety to the child. Or, in other words, the type of exercise and a spanking alone, even when viewed in the light most favorable to the state, does not show a substantial risk, as opposed to a remote or significant possibility, to the child's health and safety.

{¶32} Therefore, for those reasons, the sole assignment of error has merit. The state did not meet its burden of production as to every element of the offense.

**{¶33}** For the foregoing reasons, the judgment of the trial court regarding appellant's conviction and sentence are hereby reversed and vacated.


Donofrio, J., concurs.
DeGenaro, P.J., concurs.