ANITA LASTER MAYS, J.:
{¶ 1} Defendant-appellant Devontae Hugley appeals his convictions for kidnapping, domestic violence, aggravated menacing, endangering children, and criminal damaging with various specifications. We affirm in part, reverse in part, and remand.
I. Background and Facts
{¶ 2} Appellant was indicted on December 20, 2016, for: kidnapping, a first-degree felony ( R.C. 2905.01(A)(3) ), with a one-year and three-year firearm specification;
*64 domestic violence, a first-degree misdemeanor ( R.C. 2919.25(A) ); aggravated menacing, a first-degree misdemeanor ( R.C. 2903.21(A) ); endangering children, a first-degree misdemeanor ( R.C. 2919.22(A) ); having weapons while under disability, a third-degree felony ( R.C. 2923.13(A)(2) ; and criminal damaging or endangering, a second-degree misdemeanor ( R.C. 2909.06(A)(1) ).
{¶ 3} The charges arose from a December 8, 2016 altercation between appellant and VW. Appellant had been living with VW for several months, along with VW's son, who was not present the day of the incident, and her five-year-old daughter. There were suspicions of infidelity by both parties.
{¶ 4} On December 7, 2016, VW left the house with the daughter after viewing inappropriate activity on appellant's cell phone, and returned the next morning. VW refused to tell appellant her whereabouts the prior night, the disagreement escalated and appellant was ultimately indicted. Appellant pleaded not guilty to the charges.
{¶ 5} Prior to the trial, the state filed a motion to call VW as an adverse witness, explaining that VW had begun to "recant [her testimony] as to significant details without clear explanation." Motion (Mar. 9, 2017), p. 3. The state opined that VW was not cooperating due to her continued intimate relationship with appellant.
{¶ 6} The motion summarizes the content of a telephone call, which was initiated by appellant to a third-party who was instructed to add VW to the call. During the call, VW told appellant that she advised the state that she wanted to drop the charges and contacted the parole officer in an attempt to clear things up. Appellant instructed VW to say that he did not have a gun, and that she only said he had one at the time because she was angry and wanted him to go to jail.
{¶ 7} The trial court construed the motion as a request "for the [c]ourt on its own motion to call [VW] as a [c]ourt's witness." (Tr. 130.) The trial court granted the motion over defense objections.
A. Trial
{¶ 8} Trial commenced on March 8, 2017. The testimony established that Cleveland Police Department officers DiFranco and Tessin responded to a 911 call on December 8, 2016, reporting the assault of a female by a male wielding a firearm and wearing a red bubble jacket and gray hat. Officer DiFranco wore a body-cam. The officers observed appellant, who fit the suspect's description, standing in the open doorway of an apartment as they entered the building.
{¶ 9} Appellant walked through the doorway and the officers followed. Appellant continued to walk directly into the dining room that was adjacent to the living room door entry way, then immediately returned to the living room where VW and the child were sitting at a table. Appellant was handcuffed, frisked and taken to the police car by the officers.
{¶ 10} Officer DiFranco returned to the apartment to interview VW, who explained that appellant was angry and insisted on knowing where she spent the night. VW pushed appellant into the wall, damaging the plaster, started her car with the remote ignition and left the apartment with her daughter. Appellant walked with them to the car.
{¶ 11} VW placed the daughter in the back seat, sat in the driver's seat and appellant sat in the passenger's seat, continuing to question her. After VW refused to reveal her whereabouts, appellant removed the key from the ignition, exited *65 the car, punctured the front tire with a knife, and told VW that she was not going anywhere.
{¶ 12} VW kicked appellant in the groin for puncturing the tire and she, her daughter, and appellant returned to the apartment. Appellant responded by grabbing the hood of her sweatshirt that was pulled up onto her head. In the apartment, appellant threatened to break a small glass end table belonging to VW and looked surprised when he tapped it with a hammer and it shattered.
{¶ 13} VW told appellant that he could retrieve a lighter from her car and locked the apartment door when appellant exited. VW took her daughter across the hall to her neighbor's apartment where officers found them. The 911 call was placed by VW's cousin in response to VW's call to her.
{¶ 14} VW told the officers that appellant had a gun, and then picked up a .380 Bersa from the dining room window seat and handed it to officer DiFranco. Appellant was then Mirandized and charged. The body-cam recording was played for the jury and admitted into evidence.
{¶ 15} Det. Sudbury was assigned to investigate the incident on behalf of the domestic violence unit. He reviewed the police report and a handwritten misdemeanor complaint statement written by VW that said she did not want to prosecute. A knife, revolver, and hammer were obtained as part of the investigation. The firearm was operable but no forensic tests were done on the evidence to determine whether it had been fired.
{¶ 16} VW "was uncooperative" when contacted by Det. Sudbury. Though stating that he was not certain that his recollection was correct, Det. Sudbury "believe[d]" that VW told him that appellant "shot at me, he cut my car tire, and I don't want to prosecute." (Tr. 313.)
{¶ 17} Sgt. Christopher testified that appellant was recorded advising VW how to respond to the state's questions about the incident during a March 7, 2017 telephone conversation that occurred while appellant was in jail awaiting trial. After the conversation, VW's recollection of the incident no longer corroborated that of the officers and the body-cam evidence.
{¶ 18} VW testified as an adverse witness and said that she intentionally lied to officers about the gun so that appellant would be arrested. In spite of the impeachment evidence of prior inconsistent statements, body-cam evidence and the testimony of the officers, VW maintained that many of her initial statements were fabricated to ensure appellant's removal from the premises.
{¶ 19} Confronted with photographs of VW's apartment, the car, and other evidence, VW explained that, at a point during the argument, she felt that appellant was standing too close to her. She pushed him into the wall, using both arms, which caused damage to the plaster. Appellant was taller than VW, but appellant weighed less than VW "by a significant amount." (Tr. 396.)
{¶ 20} VW also testified that appellant got into her car and said, "talk to me, tell me where you was at or whatever" when VW attempted to leave. (Tr. 378.) VW refused, appellant removed the key and flattened the tire. Appellant returned the key "because we was going to go back in the house, talk, whatever." (Tr. 380.) VW kicked appellant in the groin as they were walking into the building and he "yanked at" her hood that was on her head at the time as though questioning why she kicked him. (Tr. 418.)
*66 {¶ 21} VW also testified that the knife that she gave to the police was not the knife that was used to cut the tire.
COUNSEL: How similar would you say this knife is to the knife that was actually used.
VW: I don't know what the knife looked like. I didn't never find it. They [police] was trying to help me find the knife. I couldn't find it.
(Tr. 398-399.)
{¶ 22} Appellant testified and confirmed that he and VW were arguing, he was pushed into the wall by VW, followed her to her car, and punctured the tire. He also confirmed pulling VW's hood to stop her from kicking him in the groin again. Appellant admitted to breaking the table and stated that he told VW that he would pay for it.
{¶ 23} Appellant denied possessing a gun and said that he walked briefly in the room adjacent to the living room to put the "weed that he was smoking in his pocket." (Tr. 580.) "How could I get a gun off of me in 10 seconds?" (Tr. 598.) Appellant also pointed out how much noise the bag that the gun was removed from made on the body-cam recording. "I couldn't put the gun in a bag or whatever in ten seconds and [the police] don't hear [it]. The door is wide open." (Tr. 599.)
{¶ 24} On March 14, 2017, the jury rendered a verdict of guilty on all counts. Appellant was sentenced to a total of nine years of imprisonment: (1) three years for the firearm specification prior to and consecutive to six years for kidnapping (Count 1), totaling nine years; (2) 180 days concurrent to the Count 1 sentence for Counts 2, 3, 4, and 6; and (3) three years concurrent with Count 1 for having a weapon while under disability.
{¶ 25} Appellant appeals his convictions.
II. Assignments of Error
{¶ 26} Appellant assigns five errors relating to the trial court's conduct of the case:
I. The trial court erred in allowing the state to admit impeachment evidence as substantive evidence of the crimes alleged.
II. The appellant was denied effective assistance of counsel in violation of Amendments VI and XIV, United States Constitution, Amendment I, Article I, Section 10, Ohio Constitution.
III. The state failed to present sufficient evidence of the offenses charged.
IV. Appellant's convictions are against the manifest weight of the evidence.
V. Appellant was denied due process and a fair and impartial trial as guaranteed by the Fifth, Sixth and Fourteenth Amendments of the U.S. Constitution, and Article I, Section 16, of the Ohio Constitution, based on prosecutorial misconduct.
III. Analysis
A. Admission of Impeachment Evidence as Substantive Evidence
{¶ 27} The first assignment of error challenges the trial court's admission of impeachment evidence. The state's impeachment motion is entitled "motion to call [VW] as an adverse witness." It is based on VW's recantation of prior statements and the recorded telephone call.
{¶ 28} The state proffered Evid.R. 611(C) in support of the motion:
(C) Leading questions. Leading questions should not be used on the direct examination of a witness except as may *67 be necessary to develop the witness' testimony. Ordinarily leading questions should be permitted on cross-examination. When a party calls a hostile witness, an adverse party, or a witness identified with an adverse party, interrogation may be by leading questions.
(Emphasis added.)
{¶ 29} The trial court elected to call VW as the court's witness as permitted by Evid.R. 614 :
(A) Calling by court. The court may, on its own motion or at the suggestion of a party, call witnesses, and all parties are entitled to cross-examine witnesses thus called.
(B) Interrogation by court. The court may interrogate witnesses, in an impartial manner, whether called by itself or by a party.
(C) Objections. Objections to the calling of witnesses by the court or to interrogation by it may be made at the time or at the next available opportunity when the jury is not present.
{¶ 30} A trial court has discretion to control the flow of the trial, including questioning witnesses "in a search for the truth" under Evid.R. 611 and 614. State v. Redon , 8th Dist. Cuyahoga No. 92611, 2009-Ohio-5966, 2009 WL 3765971, ¶ 8. A trial court must tread carefully where a jury is involved to prevent communicating the trial court's opinion on the witness's credibility to the jury. Id. at ¶ 12.
{¶ 31} Thus, the trial court was wholly within its discretion to call VW as the court's witness and we will not reverse the trial court's decision absent an abuse of discretion. Parma Hts. v. Owca , 2017-Ohio-179, 77 N.E.3d 505, ¶ 35 (8th Dist.), citing State v. Stadmire , 8th Dist. Cuyahoga No. 81188, 2003-Ohio-873, 2003 WL 549912, ¶ 26 ; State v. Davis , 79 Ohio App.3d 450, 454, 607 N.E.2d 543 (4th Dist.1992).
{¶ 32} The state presented substantial evidence of VW's recantation of material prior statements, possibly motivated by VW's ongoing relationship with appellant. VW's testimony at trial echoed the telephone discussion with appellant regarding the content of her testimony:
A witness whose appearance is important to the proper determination of the case, but who appears to be favorable to the other party, is a principal candidate for application of Evid.R. 614(A). State v. Brewer , Franklin No. 84AP-852, 1986 WL 2652 (Feb. 25, 1986). McPherson, as the victim and an eyewitness, was a principal candidate for the application of Evid.R. 614(A) when he would not otherwise cooperate with the party originally planning to call him. Therefore, the trial court's decision to call McPherson as its witness was not unreasonable, arbitrary, or unconscionable.
State v. Curry , 8th Dist. Cuyahoga No. 89075, 2007-Ohio-5721, 2007 WL 3105268, ¶ 18.
{¶ 33} A review of the body-cam recording confirms that VW's statement at the scene conflicts with her later testimony in key respects. We also observe that VW was held in contempt for failure to appear for trial and a material witness warrant was issued for her arrest, further buttressing the state's position regarding VW's reluctance to cooperate with the state. Once VW became the witness of the court, "the state was permitted to impeach [her] with [her] prior inconsistent statement." State v. Pritchard , 8th Dist. Cuyahoga No. 78497, 2001 WL 898427, at *5-6 (Aug. 2, 2001) citing State v. Dacons , 5 Ohio App.3d 112, 449 N.E.2d 507 (10th Dist.1982).
{¶ 34} We further determine that appellant's reliance on *68 State v. Davis , 8th Dist. Cuyahoga No. 102726, 2016-Ohio-694, 2016 WL 762585, is misplaced. Davis was charged with domestic violence. The victim alleged that Davis "pulled the victim's hair weave and threw it to the ground." Id. at ¶ 1. The victim admitted that she grabbed Davis's injured hand and he " 'ended up breaking my hair [weave] loose and loosening my tracks up.' " Id. at ¶ 6. Police arrived to find a " 'wig' " in the driveway. Id. at ¶ 7.
{¶ 35} The victim initially told police during the 911 call that Davis had a firearm that he placed into her mouth, threatening to kill her, and fired shots at the house. The victim also said she and Davis were trying to come up with exonerating scenarios because she had previously lied and presented false evidence resulting in Davis's incarceration. Id. at ¶ 9. The victim's description of events during trial was, to quote the trial court, "incredible" and "questionable." Id. at ¶ 10.
{¶ 36} This court reversed the trial court's finding of guilt that focused on the victim's claim regarding the hair extensions and corroboration by the police officer at the scene that the hair was laying in the driveway when he arrived. We held that there was no evidence that Davis removed the extensions. "There was no competing evidence-the victim's testimony stood alone." Id. at ¶ 13.
{¶ 37} Appellant argues that, like Davis , there is no corroborating evidence of what occurred because the body-cam is merely hearsay evidence that was later recanted by the witness. We agree with the state that appellant has failed to direct us to any error by the court in the admission of the evidence. The first assigned error is without merit.
B. Sufficiency and Manifest Weight of the Evidence
{¶ 38} We take the third and fourth errors out of order and combine them for analysis.
1. Standard of Review
{¶ 39} The Ohio Supreme Court has explained that, "[t]he legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different." State v. Thompkins , 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997).
{¶ 40} "Sufficiency of the evidence is a test of adequacy as to whether the evidence is legally sufficient to support a verdict as a matter of law, but weight of the evidence addresses the evidence's effect of inducing belief." State v. Wilson , 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, ¶ 25, citing Thompkins at 386-387, 678 N.E.2d 541.
{¶ 41} Viewed in a light most favorable to the prosecution, the question is whether the state met its burden of production. The inquiry is not whether the prosecution's evidence "is to be believed, but whether, if believed, the evidence admitted at trial supported the conviction." State v. Rudd , 8th Dist. Cuyahoga No. 102754, 2016-Ohio-106, 2016 WL 193495, ¶ 32, citing State v. Starks , 8th Dist. Cuyahoga No. 91682, 2009-Ohio-3375, 2009 WL 1965296, ¶ 25. Would " 'any rational trier of fact' " find that " 'the essential elements of the crime [were] proven beyond a reasonable doubt.' " State v. Leonard , 104 Ohio St.3d 54, 2004-Ohio-6235, 818 N.E.2d 229, ¶ 77, quoting State v. Jenks , 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus, following Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).
{¶ 42} In contrast, we sit as a thirteenth juror and intercede only where it is apparent that " 'a jury has 'lost its way' " when entertaining a manifest weight challenge.
*69 State v. Stewart, 8th Dist. Cuyahoga No. 86411, 2006-Ohio-813, 2006 WL 440153, ¶ 11, quoting Thompkins at 387, 678 N.E.2d 541. While we "may determine" that the trial court's judgment "is sustained by sufficient evidence," we "may nevertheless conclude that the judgment is against the weight of the evidence." Thompkins at 387, 678 N.E.2d 541.
2. Kidnapping
{¶ 43} R.C. 2905.01(A)(3) provides:
(A) No person, by force, threat, or deception, or, in the case of a victim under the age of thirteen or mentally incompetent, by any means, shall remove another from the place where the other person is found or restrain the liberty of the other person, for any of the following purposes:
* * *
(3) To terrorize, or to inflict serious physical harm on the victim or another * * *.
{¶ 44} The state argues that a kidnapping occurred because VW "was given no other choice but to go back into her apartment." Appellee brief (Sept. 14, 2017), p. 16. Appellant counters that VW was not threatened and did not have to follow appellant back into the apartment after the key removal and tire cutting incident.
{¶ 45} VW testified that appellant was taller than her but there was a considerable difference in weight in her favor. She pushed appellant into a wall with enough strength to damage the wall. It does not appear that VW's liberty was restrained by force, threat, or deception when VW exited the car and "kicked [appellant] in the privates." (Tr. 418.) Appellant's response was to pull her hood to prevent another strike. After this incident, VW returned to the apartment with the child.
{¶ 46} There is no evidence of restraint of removal or restraint of liberty for the purpose of terrorizing VW and the child or inflicting physical harm. We find that the evidence was not only insufficient as a matter of law, but the conviction also was against the manifest weight of the evidence. The kidnapping conviction is reversed and vacated.
3. Aggravated Menacing
{¶ 47} R.C. 2903.21(A), aggravated menacing, provides:
No person shall knowingly cause another to believe that the offender will cause serious physical harm to the person or property of the other person, the other person's unborn, or a member of the other person's immediate family. In addition to any other basis for the other person's belief that the offender will cause serious physical harm to the person or property of the other person, the other person's unborn, or a member of the other person's immediate family, the other person's belief may be based on words or conduct of the offender that are directed at or identify a corporation, association, or other organization that employs the other person or to which the other person belongs.
{¶ 48} Proof of aggravated menacing requires that the state demonstrate the victim had a " 'subjective believe or fear of serious physical harm.' " State v. Thomas , 8th Dist. Cuyahoga No. 104174, 2017-Ohio-957, 2017 WL 1034597, ¶ 22, quoting State v. Landrum , 1st Dist. Hamilton No. C-150718, 2016-Ohio-5666, 2016 WL 4651577, ¶ 9.
{¶ 49} According to VW's statements to officers at the scene, appellant wielded a gun, punctured a tire, and shattered the table in the apartment so she called the police to have him removed. We affirm the finding on this charge.
4. Endangering Children
{¶ 50} Pursuant to R.C. 2919.22(A), endangering children:
*70 (A) No person, who is the parent, guardian, custodian, person having custody or control, or person in loco parentis of a child under eighteen years of age or a mentally or physically handicapped child under twenty-one years of age, shall create a substantial risk to the health or safety of the child, by violating a duty of care, protection, or support. It is not a violation of a duty of care, protection, or support under this division when the parent, guardian, custodian, or person having custody or control of a child treats the physical or mental illness or defect of the child by spiritual means through prayer alone, in accordance with the tenets of a recognized religious body.
{¶ 51} The purpose and policy of R.C. 2919.22(A) is to protect children by " 'preventing acts of omission or neglect.' " Cleveland Hts. v. Cohen , 2015-Ohio-1636, 31 N.E.3d 695, ¶ 27 (8th Dist.), quoting State v. Bennett , 7th Dist. Mahoning No. 12 MA 223, 2013-Ohio-5524, 2013 WL 6672407, ¶ 19, quoting State v. Newman , 4th Dist. Ross No. 94CA2079, 1995 WL 499771 (Aug. 18, 1995).
{¶ 52} "A child endangering conviction may be based upon isolated incidents or even 'a single rash decision' in which a parent recklessly puts his or her child's health or safety at risk." Id. , quoting State v. James , 12th Dist. Brown No. CA2000-03-005, 2000 WL 1843196, at *2-3 (Dec. 18, 2000). See State v. Huffman , 8th Dist. Cuyahoga No. 93000, 2010-Ohio-5116, 2010 WL 4132253, ¶ 30 (conviction for endangering children affirmed where defendant's five-year-old nephew was in the backseat of the car that defendant was driving when he was arrested for a drug-related offense).
{¶ 53} The state charges that appellant was in the custody and control of the child. VW testified that appellant assumed a parental role while residing with VW and the child, and that the child viewed appellant as a parental figure.
{¶ 54} We find that the state established that the appellant had custody and control over the child and put the child's safety at substantial risk by the child's presence during the incident. State v. Masterson , 8th Dist. Cuyahoga No. 88102, 2007-Ohio-1145, 2007 WL 764533, ¶ 23
5. Having a Weapon While Under Disability
{¶ 55} R.C. 2923.13(A)(2), having a weapon while under disability, provides:
(A) Unless relieved from disability under operation of law or legal process, no person shall knowingly acquire, have, carry, or use any firearm or dangerous ordnance, if any of the following apply:
* * *
(2) The person is under indictment for or has been convicted of any felony offense of violence or has been adjudicated a delinquent child for the commission of an offense that, if committed by an adult, would have been a felony offense of violence.
{¶ 56} The body-cam evidence reveals appellant walking ahead of the officers into the dining room adjacent to the living room and quickly returning to the living room. During Officer DiFranco's discussion with VW after appellant had been removed, VW volunteered information about the gun. She walked into the adjacent room and picked the gun up from the window seat.
{¶ 57} In light of the foregoing evidence, supplemented by the 911 call and the recorded conversation between VW and appellant discussing how to handle the gun testimony, we find that the evidence is sufficient to find that appellant possessed a gun at the time of the incident.
*71 C. Prosecutorial Misconduct
{¶ 58} Appellant's fifth assignment of error asserts that the introduction of impeachment evidence of the body-cam video, video appearance of "Red," the next door neighbor that resided in the unit where VW and her daughter were sitting, and the 911 call constituted prosecutorial misconduct resulting in the denial of a fair trial. We disagree.
{¶ 59} A prosecuting attorney's conduct constitutes error where the conduct deprives the defendant of a fair trial. State v. York , 8th Dist. Cuyahoga No. 87814, 2006-Ohio-6934, 2006 WL 3804524, ¶ 23, citing State v. Keenan , 66 Ohio St.3d 402-405, 613 N.E.2d 203 (1993) ; State v. Gest , 108 Ohio App.3d 248, 257, 670 N.E.2d 536 (8th Dist.1995). Prosecutorial misconduct may violate a defendant's due process rights; therefore, "the touchstone of a due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor." York , at ¶ 23, citing Smith v. Phillips , 455 U.S. 209, 102 S.Ct. 940, 71 L.Ed.2d 78 (1982). We consider the impact of the misconduct "in light of the whole trial." Id. , citing State v. Durr, 58 Ohio St.3d 86, 94, 568 N.E.2d 674 (1991).
{¶ 60} In our analysis of the first assignment of error, we held that the trial court did not abuse its discretion in allowing the impeachment evidence and treating VW as a witness of the court. Parma Hts. , 2017-Ohio-179, 77 N.E.3d 505, ¶ 35, citing Stadmire , 8th Dist. Cuyahoga No. 81188, 2003-Ohio-873, ¶ 26 ; Davis , 79 Ohio App.3d 450, 454, 607 N.E.2d 543. Officer DiFranco, who was wearing the body-cam, testified to the video depiction. VW provided a written statement of the events, and Sgt. Christopher testified about the jail recordings discussing the gun.
{¶ 61} "[P]rosecutorial misconduct constitutes reversible error only in rare instances." State v. Eisermann , 8th Dist. Cuyahoga No. 100967, 2015-Ohio-591, 2015 WL 758989, ¶ 44, citing State v. Ball , 8th Dist. Cuyahoga No. 99990, 2014-Ohio-1060, 2014 WL 1340226, citing State v. Keenan, 66 Ohio St.3d 402, 405, 613 N.E.2d 203 (1993).
"[A] defendant's substantial rights cannot be prejudiced where the remaining evidence, standing alone, is so overwhelming that it constitutes defendant's guilt, and the outcome of the case would have been the same regardless of evidence admitted erroneously."
State v. Williams , 8th Dist. Cuyahoga No. 95796, 2011-Ohio-5483, 2011 WL 5116501, ¶ 67, quoting State v. Hicks , 8th Dist. Cuyahoga No. 95133, 194 Ohio App.3d 743, 2011-Ohio-3578, 957 N.E.2d 866, ¶ 30, citing State v. Williams , 38 Ohio St.3d 346, 349-350, 528 N.E.2d 910 (1988).
{¶ 62} The fifth assignment of error also lacks merit.
D. Ineffective Assistance of Counsel
{¶ 63} Appellant's second assigned error asserts ineffective assistance of counsel. To prevail, appellant must demonstrate that counsel was deficient in some aspect of his representation, and there is a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different. State v. Dues , 2014-Ohio-5276, 24 N.E.3d 751, ¶ 57 (8th Dist.), citing Strickland v. Washington , 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). " 'Counsel's performance will not be deemed ineffective unless and until the performance is proven to have fallen below an objective standard of reasonable representation and, in addition, prejudice arises from counsel's performance.' " Dues at ¶ 57, quoting State v. Iacona , 93 Ohio St.3d 83, 105, 752 N.E.2d 937 (2001). Thus, in *72 light of our finding that the errors are unsubstantiated errors, we do not find that counsel was ineffective.
{¶ 64} The second assignment of error is overruled.
IV. Conclusion
{¶ 65} We find that the evidence was insufficient and against the manifest weight to sustain the kidnapping conviction in this case. The conviction is ordered reversed and the matter is remanded to vacate that portion of the sentence. The remaining convictions are affirmed.
{¶ 66} Judgment is affirmed in part, reversed in part, and remanded.
MARY EILEEN KILBANE, P.J., and KATHLEEN ANN KEOUGH, J., CONCUR